Appeal of GOTTLIEB BROS.                    Docket No. 887.

In computing net income for the purpose of the excess-profits tax under the Revenue Act of 1917, a partnership taxpayer is entitled to deduct from gross income a reasonable allowance for compensation for services rendered by its members during the taxable year, though not actually drawn by them as salary.

On the evidence, *held*, That $10,000 was a reasonable allowance for compensation of each member of the taxpayer firm for services rendered during the calendar year 1917, such compensation being inclusive of expenses.

Taxpayer held not to have proven itself entitled to special assessment under the provisions of section 210 of the Revenue Act of 1917.

Submitted February 7, 1925; decided February 28, 1925.

*Ferdinand Tannenbaum, Esq.*, for the taxpayer.

*T. D. Binckley, Esq.*, and *A. H. Murray, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This appeal involves war excess-profits tax asserted against the taxpayer partnership as an entity for the calendar year 1917. From the pleadings and the evidence adduced at the hearing the Board makes the following

FINDINGS OF FACT.

During the year 1917 the taxpayer was a partnership located in Philadelphia, engaged in selling cotton and woolen goods at wholesale. It consisted of two members, Harry Gottlieb and Isadore Gottlieb, who had equal interests.

Isadore Gottlieb traveled from Philadelphia to New York and back at least once a week and occasionally throughout the State of Pennsylvania, selling merchandise. Harry Gottlieb regularly made two trips a week from Philadelphia to New York in order to purchase merchandise from the supply houses there. The partners devoted their entire time to the business of the firm.

The gross sales of the firm for 1917 were about $240,000. Of these sales about 65 per cent were made by Isadore Gottlieb and about 25 per cent by Harry Gottlieb. Practically the entire purchases for the firm were made by Harry, alone or accompanied by Isadore. Isadore managed the credits of customers and Harry managed the financing of the business.

The partners have been in business together since 1912. For at least five years prior to that time each of them was employed as a salesman in similar lines of business. The customary commissions to salesmen in these lines of business were from 4 to 5 per cent upon gross sales, such commissions including expenses. A reasonable compensation, including expenses for each of the partners had he been an employee, would have been $10,000.

During the year 1917 each of the partners had a drawing account of $40 a week. Except for this drawing account, neither partner was reimbursed by the firm for his traveling or other expenses.

In the original return of the taxpayer for the year 1917 and in the individual returns of the partners the sums drawn under these drawing accounts were treated as salaries of the partners, although they had no agreement for the payment of salaries or compensation for their services.

The taxpayer's books were examined by a field agent in audit of its returns for 1917, 1918, and 1919. He discovered that the books had not been closed at regular intervals, and that the returns, made on an accrual basis, did not truly reflect the income. He attempted to reconstruct the accounts on the basis of calendar years and actual receipts and disbursements, and recommended certain additional taxes. After conference with the Income Tax Unit, the taxpayer retained an auditor, who went over its books, reconstructing its accounts on an accrual basis. His audit was accepted by the Commissioner, with the exception of an allowance of $20,000 for compensation of members claimed as a deduction from gross income. This was disallowed by the Commissioner to the extent that it exceeded the $4,160 actually drawn under the drawing accounts above mentioned. Upon the basis of this disallowance the Commissioner determined a deficiency of $10,744.96, and this appeal was taken from his determination.

At no time prior to the taking of this appeal did the taxpayer claim that its tax should be computed under the provisions of section 210 of the Revenue Act of 1917.

### DECISION.

The deficiency should be recomputed in accordance with the following opinion. Final determination will be settled on 10 days' notice under Rule 50.

### OPINION.

IVINS: The two partners each drew, during the year 1917, $40 a week, or $2,080 a year. They had no agreement that these drawings should constitute salaries, but regarded them as withdrawn for traveling and other expenses.

The taxpayer contends that in computing its income for the purpose of excess-profits tax under the Revenue Act of 1917 a deduction should be allowed of a reasonable amount of compensation to individual partners for services actually rendered, and that the sum of $10,000 for each partner should be regarded as a reasonable compensation for his services to the firm and so deducted.

The Commissioner contends that only *necessary expenses actually paid* are deductible, and that the only amounts actually paid for compensation were $4,160, and that any claimed deduction on account of compensation in excess of these amounts should be disallowed.

The Revenue Act of 1917 is notably deficient in detail as to the method of computing invested capital and income of partnerships or individuals engaged in proprietary businesses for the purposes of computing the excess-profits tax. Section 206 of that act provides:

The net income of the partnership or individual shall be ascertained and returned * * * for the taxable year, upon the same basis and in the

same manner as provided in Title I of such Act of September eighth, nineteen hundred and sixteen, as amended by this Act, except that the credit allowed by subdivision (b) of section five of such Act shall be deducted. There shall be allowed (a) in the case of a domestic partnership the same deductions as allowed to individuals in subdivision (a) of section five of such Act of September eighth, nineteen hundred and sixteen, as amended by this Act.

Section 5 of the Act of 1916 provides, *inter alia:*

(a) For the purpose of the tax there shall be allowed as deductions—

First, the necessary expenses actually paid in carrying on any business or trade, not including personal, living, or family expenses; * * *.

This part of the 1916 Act was not changed by the 1917 amendments.

In the light of the results that would follow an absolutely strict construction of the statute, the then Commissioner, with the approval of the Secretary of the Treasury, promulgated Regulations 41, effective October 4, 1917, containing the following provisions:

ART. 32. * * * In computing net income for purposes of the excess-profits tax a partnership will be allowed to deduct as an expense reasonable salaries or compensation paid to individual partners for personal services actually rendered during the taxable year, if the payments are made in accordance with prior agreements and are properly recorded on the books of the partnership. * * *

*With respect to any period prior to March 1, 1918, regardless of whether a previous agreement has been made as to salaries or compensation, a similar deduction will be allowed for services actually rendered.* (Italics supplied.)

This regulation was made pursuant to the Tax Reviewers' minutes, which preceded Regulations 41, one paragraph of which reads:

*Deductions allowed for salaries to partners:* To be deductible as an expense, the salaries of the members of a partnership having an invested capital, for periods prior to March 1, 1918, when no partnership agreement respecting such salaries was actually made in advance, must represent a fair compensation for service actually rendered, such as might reasonably have been agreed upon at the beginning of the taxable year—having regard to the prior earnings of the business—as a fixed stipend or drawing account. Such salaries shall in no case exceed the compensation customarily paid for similar services under like responsibilities by corporations engaged in like or similar trades or businesses; and salary arrangements which aim at a division of the approximate profits can not be allowed.

Article 39 of Regulations 41 made a similar provision for individuals subject to the excess-profits tax.

The regulation quoted seems to us reasonable and proper in the light of the whole intent and purpose of Title II of the Revenue Act of 1917. It certainly does justice where a strict application of the letter of the statute would do grave injustice. It has been regularly and consistently applied by the Commissioner from its promulgation in 1917 until at least as recently as February, 1924 (A. R. R. 6087, C. B. III-1, 128).

It has not been amended or modified by subsequent statutes, regulations, Treasury Decisions, nor by any published rulings of the Commissioner.

The 1917 Act refers back to the Revenue Act of 1916 for a definition of net income and the enumeration of deductions—although the 1916 Act contained no excess-profits tax provisions. When being applied to something they were not originally drawn to cover, the provisions of the 1916 law should be construed broadly to accomplish

the general purpose of the later act. The words in the 1916 Act, "the necessary expenses actually paid in carrying on any business or trade," were written in a statute which made no specific provision for reports on an accrual basis. But under the 1917 Act reports on an accrual basis were accepted under the regulations, and *the Commissioner is now computing this taxpayer's deficiency on an accrual basis*. In these circumstances we feel justified in holding that "expenses" is a sufficiently broad term to include a reasonable compensation to the partners, and that "paid" must be taken to mean *paid or accrued*. A reasonable allowance for compensation of the partners should be deemed to have accrued during the taxable year.

The Commissioner insists that the taxpayer is bound by the statement in its original report that the salaries of the members amounted to $4,160, but he is not basing his audit upon that return, having accepted in lieu thereof a report reconstructing the accounts. In the circumstances we should look to such report rather than to the original return for the facts on which to base our decision. In that report the deduction claimed as reasonable compensation for services of members was $20,000.

This brings us to the question of what constitutes a reasonable allowance for the compensation of the partners. Between them they managed the business, attended to all the financing and credit operations, bought all the merchandise, and sold 90 per cent of it. If they had done nothing but the selling and had worked on a commission basis, they would have earned, at prevailing rates, about $10,800 between them, including expenses. The buying and management taken together were worth almost as much to the business as the selling, if not more. We are satisfied that $10,000, including expenses—the sum claimed by the taxpayer—was a reasonable allowance for compensation of each of the partners.

In computing net income for the purposes of the 1917 excess-profits tax the taxpayer should be allowed a total deduction of $20,000 (including the $4,160 already allowed) for compensation of members.

The taxpayer claims that its liability for tax should be computed under the provisions of section 210 of the Revenue Act of 1917, for the reason that it is impossible to ascertain invested capital with accuracy. But it introduced no evidence in support of this contention. It says that even income was not clearly ascertainable from the books, so of course invested capital can not be. But the Commissioner has accepted the taxpayer's own reconstruction of its accounts, with the exception of the deduction disallowed. None of his computations has been brought into question before us, and we must presume, in the absence of evidence to the contrary, that his calculations and the figures upon which he bases them are correct, for purposes of determining both income and invested capital, with the exception of the compensation item ruled upon above.

The taxpayer's claim for special assessment is denied.